GLOBE NATIONAL FIRE INSURANCE COMPANY, Appellee, v. AMERICAN BONDING & CASUALTY COMPANY et al., Appellants.

W. F. GRANDY, Receiver, Appellee, v. IOWA BONDING & CASUALTY COMPANY et al., Appellants.

**INSURANCE:** Parties—Reinsurance. Contract For Benefit of Third
1 **Party.** An insured may not maintain an action on a mere contract of *reinsurance* which has been taken out by the insurer for his own protection. An insured may, however, maintain such action (1) when reinsurance for the benefit of the insured was *stipulated for* in an

oral contract between the insured and the insurer at the time the original insurance was written (though such contract was not communicated to the reinsurer); and (2) when the contract of reinsurance was in perfect keeping with said contract and shows that it was taken out for the *benefit of the original insured.*

**INSURANCE: Reinsurance—Action Without Having Paid Loss.** The receiver of an insolvent insurance company may maintain an action to recover on reinsurance contracts entered into by the insolvent and other companies, even though neither the receiver nor the insolvent has paid *any of the loss reinsured against.*

*Appeal from Woodbury District Court.*—C. C. HAMILTON, Judge.

NOVEMBER 20, 1923.

SUPPLEMENTAL OPINION NOVEMBER 21, 1924.

THIS is an action in equity, in the name of the Globe National Fire Insurance Company, as plaintiff, to recover upon certain reinsurance contracts, which it alleges were entered into by the defendant the American Bonding & Casualty Company for its benefit, and for certain equitable relief. The contracts of insurance indemnified the American Bonding & Casualty Company against loss on account of two surety bonds for $50,000 each, executed by the Union Trust & Savings Bank as principal, and the bonding company as surety, to secure the Globe National Fire Insurance Company against loss as a depositor in the aforesaid bank. · Both principal and surety becoming insolvent, a receiver was appointed for the former, February 16, 1921, and for the latter, February 26th of the same year. The receiver for the bonding company filed a cross-petition, and asked judgment on the reinsurance contracts for the benefit of plaintiff. Judgment was entered in favor of plaintiff against the surety on the two bonds in the aggregate sum of $96,702.59, and against each of the reinsurers for the full face of their respective contracts, and in the aggregate sum of $77,500. Judgment was also entered on the reinsurance contracts in favor of the receiver for the above amount for the benefit of plaintiff. The

court also established the claim of plaintiff as a preferred claim, and ordered it paid out of proceeds received on the judgments entered. All of the reinsurers appeal.—*Affirmed.*

*Kindig, McGill, Stewart & Hatfield, Miller, Kelly, Shuttle-. worth & McManus,* and *W. M. McLaughlin,* for appellants.

*Burgess & Gill* and *Kass Bros.,* for appellees.

STEVENS, J.—The reinsurance contracts are in the standard form adopted by the Surety Association of America, and were executed by the following named companies for separate amounts, as follows: The Southern. Surety

1. INSURANCE: parties: reinsurance contract for benefit of third party.

Company, $25,000; The Iowa Bonding & Casualty Company, $17,500; The American Bonding & Casualty Company, $10,000; The National Surety Company of New York, $10,000. Each of the contracts provided that:

"In consideration of the premium stated in Section 1 hereof, the Southern Surety Company of Des Moines, hereinafter called the reinsurer, does hereby reinsure the American Bonding and Casualty Company, of Sioux City, Iowa, hereinafter called the reinsurer, under bond numbered ———, hereinafter called the bond, issued by the reinsured in the penalty of fifty thousand and no-100 dollars, in favor of Globe National Fire Insurance Company (obligee), and in behalf of Bankers Loan & Trust Company (principal), against loss thereunder and against costs and expenses, as hereinafter defined."

Appellee alleged in its petition that the depository bonds were executed by the American Bonding & Casualty Company, as surety for the Union Trust & Savings Bank, upon a specific oral agreement that it would reinsure the risk for its benefit.

The only defense interposed to appellee's cause of action is that it is neither a party to nor in privity with the reinsurance contracts, and is not the real party in interest, and therefore cannot maintain an action thereon. The right of the receiver of the American Bonding & Casualty Company to recover upon the cross-petition is challenged upon the ground

that the bonding company has paid no part of the loss, and that no recovery can be had in the name of the receiver until such loss has been paid.

Appellants further allege that whatever may be recovered, if anything, by the receiver, will inure to the benefit of the general creditors of the bonding company, and not to appellee.

The question has not previously arisen in this jurisdiction; but, with one exception, the courts in other jurisdictions have uniformly held that no action can be maintained by the insured upon a mere reinsurance contract, for the reason that it is neither a party thereto nor in privity therewith. *Fireman's Fund Ins. Co. v. Aachen & Munich Fire Ins. Co.*, 2 Cal. App. 690 (84 Pac. 253); *Allison v. Fidelity Mut. Fire Ins. Co.*, 81 Neb. 494 (116 N. W. 274); *Southwestern Sur. Ins. Co. v. Stein Double Cushion T. Co.* (Tex. Civ. App.), 180 S. W. 1165; *American Bond. Co. v. American Sur. Co.*, 127 Va. 209 (103 S. E. 599); *Appeal of Goodrich*, 109 Pa. 523 (2 Atl. 209); *Weil v. Federal Life Ins. Co.*, 264 Ill. 425 (106 N. E. 246); *City of Geneseo v. Schultz*, 257 Ill. 273 (100 N. E. 926); *Barnes v. Hekla Fire Ins. Co.*, 56 Minn. 38 (57 N. W. 314). The exception referred to above is New Hampshire. See *Hunt v. New Hampshire Fire Underwriters' Assn.*, 68 N. H. 305 (38 Atl. 145). The majority rule is supported by the better reason, and we adopt it.

Section 3459 of the Code provides that:

"Every action must be prosecuted in the name of the real party in interest; but * * * a party with whom or in whose name a contract is made for the benefit of another * * * may sue in his own name."

This statute has been the subject of frequent consideration by this court. *Johnson v. Collins*, 14 Iowa 63; *Knott v. Dubuque & S. C. R. Co.*, 84 Iowa 462; *Gooden v. Rayl*, 85 Iowa 592; *Hawley v. Exchange St. Bank*, 97 Iowa 187; *Getchell & M. Lbr. & Mfg. Co. v. Peterson & Sampson*, 124 Iowa 599; *Hipwell v. National Sur. Co.*, 130 Iowa 656; *In re Estate of Youngerman*, 136 Iowa 488; *Weiser v. Ross*, 150 Iowa 353; *Presbyterian Church v. Harken*, 177 Iowa 195; *Meyer v. Stortenbecker*, 184 Iowa 441. In each of the above cases, the contract, in terms, or upon its

face, disclosed the name of the person for whose benefit it was entered into. The action in *McKee v. Needles,* 123 Iowa 195, was brought upon a written guaranty in the name of the person to whom it was payable, although for the benefit of another. This was also true in *Flanders v. Monroe,* 172 Iowa 347.

As stated above, a cross-petition was filed by the receiver of the American Bonding & Casualty Company, in which judgment was asked against appellants upon the several reinsur-

2. INSURANCE: reinsurance: action without having paid loss.

ance contracts for the benefit of appellee. The right of the receiver to recover is challenged upon the ground that the insolvent surety has discharged no part of its liability upon the bond executed for the benefit of appellee, and that, as it has suffered no loss, no recovery can be had in the name of the receiver. The contrary appears to be the well settled rule. The reinsurance contracts are contracts of indemnity, and the receiver is entitled to recover, under the issues and facts of this case, for the benefit of general creditors, without the prior payment of the loss insured upon the bond. *Gantt v. American Cent. Ins. Co.,* 68 Mo. 503; *Allemannia Fire Ins. Co. v. Firemen's Ins. Co.,* 209 U. S. 326 (52 L. Ed. 815); *French Mut. Gen. Soc. v. United States F. & G. Co.,* 203 Fed. 558; 1 Joyce on Insurance (2d Ed.), Section 132 *et seq.; Mutual Safety Ins. Co. v. Hone,* 2 N. Y. 235; *Philadelphia Tr., S. D. & Ins. Co. v. Fame Ins. Co.,* 9 Phila. Rep. 292; *Blackstone v. Alemannia Fire Ins. Co.,* 56 N. Y. 104; *Eagle Ins. Co. v. Lafayette Ins. Co.,* 9 Ind. 443.

Counsel for appellant call our attention to *Cushman v. Carbondale Fuel Co.,* 122 Iowa 656, and *West Riverside Coal Co. v. Maryland Casualty Co.,* 155 Iowa 161, as announcing a contrary doctrine. The contract in the first of the above cases indemnified the fuel company only against "a loss actually sustained and paid in satisfaction of a judgment after trial of the issue." The contract involved in the other case, although apparently less specific, was construed as in effect substantially the same as the contract in the *Cushman* case, upon the authority of which the decision was rested. No such provision is contained in the contracts in suit.

With these statements of the law, we turn now to consider

the evidence upon which appellee relies to take the case out of the general rule and allow the obligee on the bond to recover in a direct action against the reinsurers. Edd G. Doerfler, president of the Globe National Fire Insurance Company, called as a witness in its behalf, testified as follows:

"I am president of the Globe National Fire Insurance Company. I have been in the employ of said company from 1917 up until the present time. Was secretary and general manager up until January, 1920, and president and general manager from January 1, 1920, to the present time. I entered into negotiations with Gus Elbow, president of the American Bonding & Casualty Company, for a depository bond to cover the deposit of the Globe National Fire Insurance Company in the Union Trust & Savings Bank, or, at that time, the Bankers Loan & Trust Company. These negotiations were oral. The American Bonding & Casualty Company was a corporation which had been organized a short time prior to the execution of the bond, Exhibit 1. The account of the Globe National Fire Insurance Company in the Bankers Loan & Trust Company fluctuated, and the company felt that it would be best to have a depository bond, and I called in Gus Elbow, president of the American Bonding & Casualty Company, and discussed the question with him, and asked for a $50,000 bond; and we paid the premium at that time, and I said to Gus, the American Bonding & Casualty Company being a new company, we would not care to place all of our eggs in one basket, unless he protected himself by insurance; and I wanted to know what reinsurance he would have, and on what basis. When he issued the bond and delivered it to me, the agreement was that he was to phone me and tell me what reinsurance it was on. * * * I asked Gus Elbow to come over to the office and discuss with me the cost and placing of a depository bond on our deposit in the Bankers Loan & Trust Company, because our account in the bank was a fluctuating one, and we wanted protection for our funds, and I told Mr. Elbow it was perfectly satisfactory, provided he would get reinsurance on this bond; that the American Bonding & Casualty Company was a small, new company, and the first few years of existence of a new company are delicate years, and on

account of our deposit, the company did not want to take the chance of losing its funds in the bank, in event anything should happen. He agreed to place insurance to cover his bond, and phoned me, giving the list of the companies that he had placed it with. He went back to the office, and later called me, and gave me the names of the companies. * * * He delivered the depository bond to me, and we paid the premium.''

This testimony is not contradicted. If the several contracts in terms purport to have been executed for the benefit of appellee, it is in the portion thereof quoted above. The bond executed by the Bankers Loan & Trust Company as principal, and by the American Bonding & Casualty Company as surety, is referred to in the portion of the contracts quoted, and is the particular obligation of the bonding company which the contracts undertake to indemnify against loss. This provision of the several contracts served, of course, to identify the risk assumed, and at the same time to apprise the reinsurers-that the purpose of the bond was to protect appellee against loss on account of deposits entered with the Bankers Loan & Trust Company. The record does not disclose that appellants had notice of the oral conversation or understanding between the president of appellee insurance company and the president of the bonding company, but we fail to see how this circumstance materially affects the relations or rights of the parties. But one premium was paid the bonding company for the insurance, and it was paid with the understanding that the risk would be reinsured and the names of the reinsuring companies furnished to appellee. The purpose of Doerfler, as the agent of appellee, in demanding of Elbow, the representative of the bonding company, that it reinsure its risk, is evident. The bonding company was a new concern, and not yet in a financial condition to satisfy Doerfler to accept it as a surety unless it strengthened its ability to pay a loss, if one should occur, by taking out insurance on its own behalf for that purpose. In other words, appellee accepted the bonding company as a surety only upon condition that it reinsure the risk for its benefit. All of the parties to the transactions were engaged in the insurance business and, of course, were familiar with the manner in which

such business was transacted. Both Doerfler and Elbow knew that the premium paid would be divided by the bonding company with some reinsuring company or companies.

So far as anything is shown by the record, appellants desire only to be released from liability upon payment of the loss. They do not represent the general creditors of the bonding company, and a discharge from liability by the payment of a judgment in favor of appellee, or of the receiver, is all they have a right to claim, in the absence of a defense upon the merits. The defense urged against the right of appellee to recover is that it is not the real party in interest, and the only defense set up against the right of the receiver to recover upon the cross-petition is that no part of the loss has been paid. This defense cannot be sustained. The plea of appellants that recovery, if awarded in favor of the receiver, can only be for the benefit of general creditors, does not affect their liability to the receiver upon the issues tendered by the cross-petition. If the theory of appellants that the recovery in favor of the receiver can only be for the benefit of the general creditors be approved, then the protection sought by appellee in good time and before the surety was accepted will be practically dissipated and lost to it. This action is in equity, and it seems to us that, as the clearly established purpose of Doerfler was to secure complete indemnity against loss on account of deposits made by his principal with the Bankers Loan & Trust Company, and as the reinsurance was procured by the bonding company in pursuance of the mutual agreement and understanding of the parties, the contracts therefor were entered into for the benefit of appellee. Is a court of equity without power to give effect to the mutual agreement and understanding of the parties thus clearly shown, or must it permit recovery only in favor of the receiver, for the benefit of general creditors? It seems to us that, notwithstanding the well established general rules to which we have heretofore referred, a court of equity, under the facts of this case, must either award judgment in favor of plaintiff against appellants, or in favor of the receiver upon the cross-petition against them, and direct that the proceeds of such judgments be applied to discharge the obligations of the surety upon its bond. The

bonding company joins with appellee in asking that the contracts be held to have been entered into for the benefit of appellee, and that the proceeds of the recovery, so far as the same are necessary to pay the loss, be applied to that purpose. We shall take the shorter course, and sustain the judgment entered in the court below in favor of appellee. Nor do we deem it necessary to reverse the judgment entered in favor of the receiver for the use and benefit of appellee. Surely, the general creditors of the bonding company cannot, in this situation, complain of appellants or assert further liability against them. This result does complete equity. It is in harmony with the mutual intention of the obligee and the surety on the bond.

Other matters are discussed by counsel for appellants, but, as they do not require a reversal of the judgment, we refrain from discussing them. It is our conclusion that the judgment and decree of the court below is right, and should be and is—
*Affirmed.*

PRESTON, C. J., EVANS, DE GRAFF, and VERMILION, JJ., concur.

### SUPPLEMENTAL OPINION.

PER CURIAM.—It is claimed by appellants in their petition for rehearing that the Globe National Fire Insurance Company, plaintiff, in addition to the policies in controversy, held an additional policy in the Fidelity & Deposit Company of Maryland; that certain dividends have been paid by the receiver of the insolvent bank; and that the various policies contained provisions for the prorating of the loss sustained, which requires further hearing by the court.

For the purpose of avoiding any uncertainty in the court below, we desire to say that the opinion filed herein should not be construed as finally adjudicating the above matters, but that same are left open for the further hearing and adjustment by the court in which the receivership is pending and the judgment was entered, in harmony with the law as announced in the opinion of this court. Subject only to the right of the court below to hear, determine, and adjust the above matters accord-

ing to the law and the facts, the opinion heretofore filed is adhered to, and the petition for rehearing overruled.