GLOBE NATIONAL FIRE INSURANCE COMPANY, Appellee, v. AMERICAN BONDING & CASUALTY COMPANY, Appellee, et al., Appellants.

W. F. GRANDY, Receiver, Appellee, v. IOWA BONDING & CASUALTY COMPANY et al., Appellants.

1086

October 25, 1927.

Opinion on Rehearing January 10, 1928.

Rehearing Denied April 5, 1928.

*Kindig, McGill, Stewart & Hatfield, Miller, Kelly, Shuttle-worth & McManus,* and *W. M. McLaughlin,* for appellants.

*Burgess & Gill,* for Globe National Fire Insurance Company, appellee.

*Kass Bros.,* for American Bonding & Casualty Company and W. F. Grandy, Receiver, appellees.

Evans, J.—I. The plaintiff herein was a depositor in the Union Trust & Savings Bank of Sioux City. The American

Bonding & Casualty Company. issued to it its two insurance policies, or bonds, for $50,000 each, to insure such deposits. These policies are known in the record as A and B, respectively. The American Bonding & Casualty Company reinsured its risk in part with the following named companies, defendants herein: Iowa Bonding & Casualty Company, Southern Surety Company, National Surety Company, and American Surety Company. The division of the risk on Policy A was as follows: Iowa Bonding & Casualty Company, 35 per cent thereof ($17,500); Southern Surety Company, 30 per cent thereof ($15,000); American Bonding & Casualty Company (retained) 35 per cent thereof ($17,500).

The division of risk on the second $50,000 policy, B, was as follows: Iowa Bonding & Casualty Company 20 per cent thereof ($10,000); Southern Surety Company, 20 per cent thereof ($10,000); American Surety Company 20 per cent thereof ($10,000); National Surety Company 30 per cent thereof ($15,000); American Bonding & Casualty Company (retained) 10 per cent thereof ($5,000).

The principal bond of the American Bonding & Casualty Company contained the standard pro-rata clause, which purported to limit liability to the same proportionate share of the net liability in case of loss as the amount of its insurance bore to the whole amount of valid and collectible insurance covering such property. The policies of the reinsuring companies each contained a standard pro-rata clause which purported to limit liability of each reinsuring company to the same proportionate share of the net liability, in case of loss, as the amount of its insurance bore to the face of the policy. While the insurance was in force, the American Bonding & Casualty Company went into the hands of a receiver. Shortly thereafter, and on February 14, 1921, the plaintiff procured an additional policy of insurance for $25,000 from the Fidelity & Deposit Company of Maryland. On February 16, 1921, the Union Trust & Savings Bank closed its doors, the policies of the American Bonding & Casualty Company and that of the Fidelity & Deposit Company being, at the time, in force. The plaintiff brought this action on the policies of the American Bonding & Casualty Company, and named the reinsuring companies as party defendants. There was no privity of contract between the plaintiff and the re-

insuring companies, and it could not have maintained an action at law against them. Their legal liability was to the American Bonding & Casualty Company. The receiver of the American Bonding & Casualty Company filed a cross-petition against the reinsuring companies, asking to recover against them for the benefit of the plaintiff. We held on the first appeal that, notwithstanding the lack of privity between plaintiff and the reinsuring companies, equity would protect the plaintiff in its equitable right to the proceeds of the reinsurance policies, and, in view of the insolvency of the principal obligor, would permit it to recover directly from the reinsurers, without the intervention of the receiver; and we affirmed the order of the district court awarding judgment to plaintiff accordingly. (198 Iowa 1072). In the original decree entered by the district court, no account had been taken of possible future dividends from the Union Trust & Savings Bank, then in course of liquidation; nor had any account been taken of the reduction of liability to which the American Bonding & Casualty Company was entitled by reason of the existence of other valid and collectible insurance,—to wit, that of the Fidelity & Deposit Company, nor of the pro-rata clauses of the reinsuring policies. These matters being urged in a petition for rehearing before us, we filed a supplemental opinion, reserving these matters from the adjudication, and directed the district court to take these matters into account, and to enter appropriate pro-rata credits upon the several judgments entered against the defendants. (198 Iowa 1080). A dispute has arisen between the parties as to the scope of our affirming adjudication on that appeal. The contention of the appellants is that that reservation opened up the whole question of the pro-rata liability of the respective defendants; that in the original decree the district court erroneously failed to award to the respective defendants the benefit of the pro-rata clauses of their contract, in that the judgments were entered for the maximum amounts named, without regard to the proportions of the loss; that the appellants, therefore, were entitled, not only to appropriate credits, by reason of future liquidating dividends of the Union Trust & Savings Bank and by reason of coinsurance of the Fidelity & Deposit Company, but, independent of these, to relitigate the basic measure of liability adopted in the original

decree. It is claimed also by them that the original decree contained an error of computation of interest, amounting to more than $2,500, against the appellants, and that our supplemental opinion opened the decree to a correction of such error. On the other hand, it is contended by appellee that, upon the second appeal (200 Iowa 847), we put a construction upon our former supplemental opinion (198 Iowa 1080), and that we therein limited the scope of the supplemental opinion to the first two subjects above named, and that its reservations did not save to the appellants the right to insist upon the pro-rata provisions of their reinsuring policies, nor the right to a correction of the decree for alleged errors in computation. Some expressions contained in our opinion on the second appeal give a color of support to this contention of the appellee's. Our first consideration thereof disposed us to the sustaining of the contention of appellee at this point. A further consideration, however, satisfies us that it is not tenable. The language of that opinion should be construed in the light of the issue then and there under consideration. That was an appeal from an order by the district court striking a counterclaim or offset filed by the reinsuring companies as against the reinsured, the American Bonding & Casualty Company. This offset was predicated upon matters foreign to the reinsuring policies. The question presented to us was whether this offset was within the permission of our supplemental opinion; and we held to the negative, and affirmed the order of the district court. The question now considered was in no manner involved on that appeal. We must, therefore, still look to the supplemental opinion itself to determine its reservations from the adjudication. It was, in part, as follows:

"It is claimed by appellants in their petition for rehearing that the Globe National Fire Insurance Company, plaintiff, in addition to the policies in controversy, held an additional policy in the Fidelity & Deposit Company of Maryland; that certain dividends have been paid by the receiver of the insolvent bank; and that the various policies contained provisions for the pro-rating of the loss sustained, which requires further hearing by the court. For the purpose of avoiding any uncertainty in the court below, we desire to say that the opinion filed herein should not be construed as finally adjudicating the above matters, but that same are left open for the further hearing and adjustment

by the court in which the receivership is pending and the judgment was entered * * * ."

It appears from the record that the Union Trust & Savings Bank was in course of liquidation, and that large dividends had been declared therein, which should have been applied upon the plaintiff's loss and in reduction of the liability of the American Bonding & Casualty Company; that the effect of the coinsurance by the Fidelity & Deposit Company had been ignored in the original decree; that no account had been taken of the pro-rata clause contained in the reinsuring policies which purported to limit the liability of each reinsurer to the same percentage of the net loss as the amount of its insurance bore to the face of the policy. We think the effect of the supplemental opinion was to reserve these three subjects from the adjudication, and that, therefore, the judgments as entered are subject to such modification as is required by a proper consideration of these factors. We do not think, however, that the supplemental opinion saved to the appellants the right to claim an alleged error in the original computation of plaintiff's loss.

As to the dividends realized in the liquidation of the Union Trust & Savings Bank, full account thereof was taken in the decree now appealed from, and complaint is made only of the method of their apportionment.

The questions left open to our consideration relate to (1) the effect of the coinsurance of the Fidelity & Deposit Company upon the right of these defendants to a pro-rata reduction of their respective liabilities; and (2) the effect of the pro-rata clause in their policies upon their pro-rata liability as between them and the American Bonding & Casualty Company, under which the plaintiff necessarily claims.

II.  On the date of the closing of the Union Trust & Savings Bank, February 16, 1921, the plaintiff's deposits, with accruing interest, amounted to a little less than $100,000.  As surety insurance therefor, it held the two policies of the American Bonding & Casualty Company for $50,000 each, and the policy of the Fidelity & Deposit Company for $25,000.  We have first to consider what was the measure of liability of the American Bonding & Casualty Company.  No greater liability can be charged against the reinsuring defendants than the respective percentage of each one

of the net liability of the American Bonding & Casualty Company. The reinsuring defendants contend that the insurance police of the Fidelity & Deposit Company was coinsurance with that of the American Bonding & Casualty Company. The plaintiff contends to the contrary. The reason suggested for the contrary contention is that the American Bonding & Casualty Company was already under receivership, and that, therefore, there was no valid and collectible insurance with which the Fidelity & Deposit Company could become a coinsurer. The argument does not reach the point. The receivership did not terminate the liability of the American Bonding & Casualty Company. Its insurance was still *valid*, if not wholly collectible. It was collectible to the extent of such dividends as might be paid in the receivership. It was also collectible in equity to the extent of the reinsurance policies. If it be assumed that the two $50,000 policies were valid and collectible, then the liability of the Fidelity & Deposit Company, as coinsurer, could not exceed one fifth of the total loss. But if the two $50,000 policies were valid and collectible only to a lesser amount, then the proportionate liability of the Fidelity & Deposit Company would be still larger than one fifth. The question of the extent of collectibility of the American Bonding & Casualty Company policies could only affect the proportionate liability of the Fidelity & Deposit Company. It could not become a reason for saying that there was no *coinsurance*, nor that the liability of the Fidelity & Deposit Company was less than one fifth of the loss. The decree of the district court held these two insurers to be coinsurers. The complaint of the appellants is that the final decree failed to take account of the proper proportionate liability of the Fidelity & Deposit Company. It appears that the plaintiff began an action against the Fidelity & Deposit Company, and then accepted from such company the sum of $15,000 in full payment of its liability. Against this sum it charged its expenses of $787.45, and credited upon its loss the balance of $14,212.55, and apportioned the same as credits upon the judgments against the reinsuring defendants. The complaint of the appellants is that the proportionate liability of the coinsurers to the insured was respectively four fifths and one fifth. The liability of the American Bonding & Casualty Company, therefore, could not exceed four fifths of the net loss, nor the liability

of the Fidelity & Deposit Company fall below one fifth of the net loss. The original decree entered judgment against the defendants on the basis of the liability of the American Bonding & Casualty Company for the full amount of the loss, without regard to the coinsurance. The reservation of the supplemental opinion on the first appeal saved to the defendants the right to have the amount of the liability of the coinsurer applied pro rata as a credit upon the judgments entered in the original decree.

The district court treated the sum of $14,212.55, being the net amount of the compromise with the Fidelity & Deposit Company, as fixing the proportionate liability of that company. This was erroneous. Its liability was fixed by the face of its policy and its proportionate relation to the coinsurance. The liability of the coinsurers to the insured was several, and not joint. Neither had any interest in the liability of the other, except a mathematical one. The proportionate liability of the one necessarily determined the proportionate liability of the other. That proportion being determined in accord with the terms of the respective policies, it could not be changed to the detriment of either coinsurer by the voluntary act of the insured in accepting from the other coinsurer less than his proportionate liability. Neither coinsurer has any interest in or control over any settlement which the insured may choose to make with the other. 26 Corpus Juris 455; 4 Joyce on Insurance (2d Ed.), Section 2492; 26 Corpus Juris 152; 1 Joyce on Insurance (2d Ed.), Section 133. The question at this point was considered by us in *Goodwin v. Merchants' & B. Mut. Ins. Co.*, 118 Iowa 601. In that case we said:

"It is conceded that, the plaintiff's policy with the defendant being for $1,000, or two thirds of the total amount of insurance upon the property, she could not recover from defendant more than two thirds of the amount of her loss, less the balance due on her premium note. The trial court so instructed the jury, and it must be presumed that the verdict returned represents the amount due plaintiff on that basis. It is said, however, that plaintiff received from the Pennsylvania Company $336.65, and that this sum 'should have been deducted from the amounts ascertained by the jury.' It is difficult to conceive

upon what theory this claim is advanced. The two companies were liable to the plaintiff, not jointly, but severally, in the proportion of two thirds and one third. It was competent for either of these insurers to settle with plaintiff on any terms upon which they could mutually agree, and, so long as defendant is not required to respond in a sum in excess of two thirds of the value of the property destroyed, or in excess of the amount named in the policy, it is wholly immaterial whether the Pennsylvania Company paid more or less than it might have been held to pay at the end of a litigation.''

The appellee further urges at this point that the burden was upon the defendants to prove that the policy of the Fidelity & Deposit Company was valid and collectible. Without passing on the question of burden of proof, it is sufficient to say that, upon this record, such policy *was* valid and collectible, within the meaning of the law. It was valid upon its face. The company was solvent. The court record of the disposition of the case against the Fidelity & Deposit Company was a recital of *full payment* of the liability by the insuring company and a dismissal of the case at the cost of the defendant insuring company. The record leaves no room to question the presumptive validity of the policy and its collectibility. It must be held, therefore, that the proportionate liability of the Fidelity & Deposit Company was one fifth the net loss, and that the amount of such liability should be applied pro rata upon the respective judgments against the defendants.

III. The proportionate liability being thus fixed, as between the Fidelity & Deposit Company and the American Bonding & Casualty Company, it remains to consider the extent and basis of the liability of the reinsuring companies, appellants herein. The reinsuring companies, appellants, were in privity of contract with the American Bonding & Casualty Company, and not with the plaintiff herein. The measure of the liability of each of them, in equity, to the plaintiff is measured by its liability to its principal, the American Bonding & Casualty Company. The first basic factor in the computation of the liability of each reinsurer is the total liability of its principal, the American Bonding & Casualty Company, on its two policies, A and B. As we

have already seen, two fifths of the net loss of the plaintiff is attributable to Policy A, and two fifths thereof to Policy B of the American Bonding & Casualty Company. The original decree was entered on February 1, 1922. It fixed the net loss of the plaintiff as of that date at $96,702.59. Two fifths of this amount would be $38,681.02, and would represent the total lia-. bility of the American Bonding & Casualty Company to the plaintiff under each policy. The Iowa Bonding Company reinsured the American Bonding & Casualty Company for 35 per cent of its net loss under Policy A. The Southern Surety Company reinsured it for 30 per cent of its net loss under the same policy. The American Bonding & Casualty Company retained for itself, and without reinsurance thereon, 35 per cent of Policy A. If the American Bonding & Casualty Company were still a going and solvent concern, no one would question the proportionate liability for this loss, as between it and its two reinsurers. The contention of the appellee at this point is that, because of the insolvency of the American Bonding & Casualty Company, no account should be taken of its pro-rata liability in fixing the pro-rata liability of the reinsuring companies. Because of such insolvency it contends that each reinsuring company is liable to the plaintiff in equity for the full face of its reinsuring policy, $17,500 and $15,000, respectively. The effect of this argument is to contend that the reinsuring companies are coinsurers with their principal, and as such, are insurers of the plaintiff itself. The answer to this is that reinsurers are not coinsurers with their principal, nor are they, in a legal sense, insurers of the plaintiff at all. The insurance carried by the plaintiff under the two policies A and B was not increased one dollar by the reinsurance contracts of these appellants. The reinsurance was for the benefit and security of the American Bonding & Casualty Company alone, and the liability of the reinsuring companies is fixed by the terms of the reinsuring policies. The fact that a court of equity may enforce such liability against the reinsuring companies, notwithstanding the insolvency of their principal, and enforce the same for the benefit of the insured plaintiff, does not operate to change one whit the contractual relations existing between the reinsuring companies and their principal under their reinsuring policies. The

measure of the liability of the reinsuring companies remains the same, whether their principal continues solvent or insolvent.

The doctrine of coinsurance operates to the protection of insurance companies against excessive insurance. Where it is made to appear that the insurance carried by the insured in different companies is in excess of the loss, then the loss will be distributed pro rata among the coinsuring companies. In the earlier application of this doctrine, the right of contribution was allowed, as between the coinsuring companies. In later years, the policy forms of insurance companies have quite universally incorporated in their policies a pro-rata clause, and limited liability of the insurer to the proportionate amount of the loss. Where the policies contain such a stipulation, it has been universally held that no recovery can be had against the coinsurer in excess of its proportionate amount of the loss. In such a case, no right of contribution is saved to the coinsurer if he pay more than his proportionate amount of the loss. See 26 Corpus Juris 455, and authorities there cited.

The only question of excessive insurance and the prorating thereof involved in this case is that between the Fidelity & Deposit Company and the American Bonding & Casualty Company. Whether the reinsurers could, in any event, be deemed coinsurers, as between themselves, we have no occasion to consider. Even if they were so deemed, yet the pro-rata clause in their reinsuring policies would govern, and would limit the liability of each to the proportionate amount stipulated in the pro-rata clause of the policy. 1 Joyce on Insurance (2d Ed.), Section 133; 26 Corpus Juris 152; 14 Ruling Case Law 1452. It follows that, on the basis of the net loss, as fixed in the original decree, two fifths thereof was chargeable to Policy A. Of the amount so charged to Policy A, the Iowa Bonding & Casualty Company was liable for 35 per cent thereof, and the Southern Surety Company for 30 per cent thereof. Such was the stipulation of the pro-rata clause. 35 per cent of Policy A was carried by the American Bonding & Casualty Company on its own account, at its own risk, and without reinsurance. The same rule applied to Policy B distributes the loss under that policy in the proportion of 20 per cent each to the Iowa Bonding & Casualty Company, Southern Surety Company, and American Surety Company; and 30 per cent thereof to the

National Surety Company. On this policy, the American Bonding & Casualty Company carried 10 per cent thereof at its own risk, and without reinsurance.

It appears that, since the date of the original decree, two liquidating dividends have been received from the Union Trust & Savings Bank by the plaintiff, as follows: December 1, 1922, $9,805.57; April 1, 1924, $7,354.17. In the distribution of this benefit, two fifths should be attributed to Policy A, and two fifths thereof to Policy B. As between the reinsuring companies and their principal, each should receive credit in the same proportion as its liability. It is stated in argument that since the original decree a further liquidating dividend of $3,039.74 has been paid. Counsel for both sides agree that this dividend may be taken account of in the final computation, and it will be so done in formulating the decree.

Either party may move for decree in this court, upon serving copy of its proposed decree and of its computations upon the adverse party.

For the reason herein indicated, the decree below is reversed in part and affirmed in part.—*Reversed in part; affirmed in part.*

FAVILLE, DE GRAFF, ALBERT, and WAGNER, JJ., concur.